UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CAROLYN MYLES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 07 C 6122 |
| | ) | |
| MICHAEL ASTRUE, COMMISSIONER OF SOCIAL SECURITY, | ) ) | |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM OPINION</u>

CHARLES P. KOCORAS, District Judge:

This matter comes before the Court on the motion of Plaintiff Carolyn Myles ("Myles") for the entry of a final judgment under Federal Rule of Civil Procedure 58 and an award of attorney's fees pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412, against Defendant Michael J. Astrue, Commissioner of Social Security ("the Government" or "Commissioner"). For the reasons set forth below, we grant both motions.

## BACKGROUND

Myles began suffering from diabetes in 2002. Before applying for benefits, she had worked as a parts inspector and a certified nurse's assistant. In August 2004, Myles visited Dr. Max Goldschmidt and reported that she had not been taking one of her medications, Metformin, on a daily basis because she experienced diarrhea when taking

the medication. When she visited him again in January 2005, complaining of frequent urination, he diagnosed Myles with a urinary tract infection and prescribed antibiotics. That same month, Myles applied to the Social Security Administration ("SSA") for Social Security Disability Insurance benefits ("DIB") and Supplemental Security Income ("SSI"). In her application, Myles alleged that she had been disabled since January 11, 2005, as a result of limitations due to diabetes.

Sometime in 2005, a Dr. Kale examined Myles in connection with her application for benefits. Dr. Kale noted that Myles had a history of polyuria (passage of more than 2.5 liters of urine every 24 hours), nocturia (need to get up at night to urinate), and occasional numbness of the extremities. This examination did not reveal any neurological problems with Myles's hands or feet nor any impairments in her ability to grasp and grip.

In April 2006, Myles visited the offices of Dr. Lovinger and complained of hair loss. Dr. Lovinger ordered Myles to stop taking Metformin and to substitute another diabetes medication and noted that she was not checking her blood sugar levels regularly. Dr. Lovinger examined Myles again in August 2006. Though Myles reported that she suffered from fatigue and muscle weakness, Dr. Lovinger did not discover any neurological problems. Myles returned to Lake County in November 2006 complaining of polyuria and pain in her feet and legs.

An administrative law judge ("ALJ") held a hearing on Myles's application for DIB and SSI on January 16, 2007. During the hearing, Myles testified that her diabetes-induced symptoms included fatigue, numbness and tingling in her hands and feet, and a need to use the restroom at least once an hour. The ALJ also heard testimony from a vocational expert, Linda Gels. Gels testified that a person with Myles' alleged limitations could still work in a bench assembly, packager, tester, clerk, or cashier capacity and further testified that there were 7,500 positions available for those jobs. However, Gels also testified that a person who needed a bathroom break once an hour would not be able to maintain employment in these positions.

In May 2007, Dr. James Sims completed a Medical Assessment of Condition and Ability to Do Work Related Activities at the request of Myles's attorney. Dr. Sims had been Myles' treating physician for the previous five years. Dr. Sims' concluded that, on good days, Myles could stand, walk, or sit for six to eight hours without interruption. However, Sims also stated that Myles would have trouble completing a work day and work week without interruption as a result of her symptoms and that she could be expected to have good and bad days. Sims stated that Myles would essentially be unable to perform any tasks on her bad days.

On June 26, 2007, the ALJ issued a written opinion in which he concluded that Myles was not disabled and therefore not entitled to either DIB or SSI. In assessing

Myles's claim under the five-step analysis of 20 C.F.R. § 404.1520(a), the ALJ found that Myles had not engaged in substantial gainful activity since January 2005, that she suffered from severe diabetes, and that her diabetes did not meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulation No. 4 of the Social Security regulations. The ALJ then determined Myles's Residual Functional Capacity ("RFC") and found she had significant limitations in her capacity to perform work and could not continue in any of her past jobs.

In analyzing Myles's RFC, the ALJ examined her testimony regarding the severity of her symptoms and found it not credible for a number of reasons. The ALJ found Myles's claims of frequent urination "absolutely not believable in light of the fact the claimant has not complained of having to use the bathroom frequently to medical personnel" and had not complained of urinary frequency since she was diagnosed with the urinary tract infection in 2005. In making his credibility determination, the ALJ also noted that Myles's failures to comply with her doctors' recommended treatment "fail[ed] to suggest symptoms that are particularly troublesome for the claimant."

After assessing Myles's credibility, the ALJ examined other record evidence pertaining to the severity of Myles's limitations. The ALJ highlighted the fact that Myles's doctors had not prescribed insulin to treat her diabetes as suggesting that her limitations were no more intense than the ALJ's findings indicated. The ALJ also

examined various medical reports, including the medical assessment completed by Dr. Sims. The ALJ noted that Sims's report essentially corroborated the ALJ's findings regarding Myles's limitations. The ALJ then concluded his analysis of Myles's claim and found that she was not disabled under the Social Security Act. Myles sought review from the Appeals Council, which declined to hear the case. Myles appealed to this court, and we affirmed the ALJ's decision.

Myles then appealed to the Seventh Circuit, who vacated our decision and remanded the case back to the ALJ. *Myles v. Astrue*, 582 F.3d 672 (7th Cir. 2009). The Seventh Circuit concluded that the ALJ's decision was not supported by substantial evidence "in light of the ALJ's questionable credibility findings, cursory analysis of symptoms, improper medical determination regarding medication, and selective discussion of the evidence[.]" *Id*. at 678. Myles now moves for an entry of final judgment under Fed. R. Civ. P. 58 and an award of attorney's fees under the EAJA.

## DISCUSSION

### I.   Motion for Judgment

Before proceeding to the merits of Myles's application for attorney's fees under the EAJA, we must first address her motion for entry of judgment under Fed. R. Civ. P. 58. Though the language of the Seventh Circuit's opinion purported to remand Myles's case directly to the SSA, the Seventh Circuit has recognized that appellate

courts do not "have authority to enter . . . a judgment remanding a disability case to the [SSA.]" *O'Connor v. Shalala*, 23 F.3d 1232, 1234 (7th Cir. 1994). The power to remand a disability case to the SSA is vested exclusively in the district courts and can be accomplished only by entering judgment in the district court pursuant to Fed. R. Civ. P. 58. *Id*. The proper course for a district court in this situation, the *O'Connor* court instructed, is to enter judgment pursuant to Rule 58 and then enter a remand order pursuant to 42 U.S.C. § 405(g). *Id*. We therefore grant Myles's motion for entry of final judgment pursuant to Rule 58, reverse the ALJ's decision, and remand the case to the SSA pursuant to sentence four of 42 U.S.C. § 405(g).

Granting Myles's motion for entry of judgment under Rule 58 also brings her EAJA application to maturity. Under 42 U.S.C. § 2412(d)(1)(B), an EAJA application must be presented "within thirty days of *final judgment in the action*." (emphasis added). A remand pursuant to sentence four of 42 U.S.C. § 405(g) constitutes a "final judgment" for purposes of EAJA petitions. *Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991). Though Myles presented her EAJA application before the remand occurred, our decision makes consideration of Myles's application for attorney's fees under the EAJA appropriate.

## II. Motion for Attorney's Fees

The EAJA states that a district court may award attorney's fees where (1) the claimant is a prevailing party; (2) the government was not substantially justified; (3) no

special circumstances exist that would render an award unjust; and (4) the fee application is submitted to the court within 30 days of final judgment and is supported by an itemized statement. 28 U.S.C. § 2412. The only question we must resolve is whether the government's position was substantially justified – the parties do not dispute Myles's status as a prevailing party or the timeliness of her application and the Commissioner does not allege any special circumstances that would render an award unjust.

The government's position is substantially justified "if [its] conduct has a reasonable basis in law and fact, that is, if a reasonable person could believe the position was correct." *Golembiewski v. Barnhart*, 382 F.3d 721, 724 (7th Cir. 2004) (internal quotation marks omitted). The government bears the burden of proving that its position was substantially justified. *Stewart v. Astrue*, 561 F.3d 679, 683 (7th Cir. 2007). To demonstrate substantial justification, the government must show that its position was based on "(1) a reasonable basis in truth for the facts alleged; (2) a reasonable basis in law for the theory propounded; and (3) a reasonable connection between the facts alleged and the theory advanced." *United States v. Hallmark Constr. Co.*, 200 F.3d 1076, 1080 (7th Cir. 2000). "EAJA fees may be awarded if either the government's pre-litigation conduct or its litigation position are not substantially justified. However, the district court is to make only one determination for the entire civil action." *Marcus v. Shalala*, 17 F.3d 1033, 1036 (7th Cir. 1994).

Myles argues that the litigation positions asserted in defending the ALJ's decision lacked substantial justification because the Commissioner's arguments before the Seventh Circuit were premised upon facts and legal theories other than those relied upon by the ALJ. For example, on appeal, the Commissioner argued that the ALJ did not discuss Myles's non-compliance with her medications in assessing Myles's credibility but mentioned her non-compliance in explaining his inability to determine the effectiveness of her medication. However, the record reveals that the ALJ did not reach this conclusion in his opinion. Principles of agency law require the Commissioner to confine his defense of the ALJ's decision to the theories actually relied upon by the ALJ. *See Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002). The Commissioner's suggestion of an alternate theory in supporting this portion of the ALJ's analysis deprives his argument of a reasonable basis in law.

The Commissioner used a similarly flawed approach in defending the ALJ's analysis of Myles's urinary frequency limitation. In his appellate brief, the Commissioner argued that the ALJ's minimization of the severity of Myles's symptoms was supported by Myles's testimony and the doctors' notes in the record. The ALJ did not rely on these facts in performing his analysis. The Commissioner lacked a reasonable basis in law in arguing that these facts supported the ALJ's conclusion. *Golembewski*, 382 F.3d at 725 ("the Commissioner's argument had no reasonable basis in law because her argument was based upon facts not relied upon by the ALJ").

In response, the Commissioner does not provide rationales for the problematic arguments Myles identified. Rather, the Commissioner essentially reiterates the contentions described above without discussing whether or not the argument had a reasonable basis in law or fact. The Commissioner bears the burden of demonstrating that his litigation position was substantially justified. *Stewart*, 561 F.3d at 683. Given the issues identified by Myles, and the Commissioner's inability to provide explanations for them, we conclude that the Commissioner's litigation position was not substantially justified.

Myles's EAJA application requests $22,314.87 in fees, an amount that the Commissioner does not dispute. Having reviewed the itemized summaries prepared by Myles, we find that the amount requested is reasonable and should be awarded.

## CONCLUSION

Based on the foregoing, Myles's motion for entry of judgment under Rule 58 is granted and her application for attorney's fees under the EAJA is also granted. We reverse the ALJ's decision and remand the case back to the SSA pursuant to sentence four of 42 U.S.C. § 405(g).

　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　Charles P. Kocoras
　　　　　　　　　　　　　　　　United States District Judge

Dated:   January 21, 2010